In the

# United States Court of Appeals

## For the Seventh Circuit

CERTIFIED COPY

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

———————————

No. 19-2189

CSI WORLDWIDE, LLC,

*Plaintiff-Appellant,*

*v.*

TRUMPF INC.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 2018 CV 05900 — **Charles R. Norgle**, *Judge.*

———————————

ARGUED DECEMBER 9, 2019 — DECIDED DECEMBER 11, 2019

———————————

Before EASTERBROOK, ROVNER, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. TRUMPF Inc., the U.S. subsidiary of an international business, makes specialty tools such as precision laser cutters. Trade shows are among its selling venues, and it hired Lynch Exhibits to handle its appearance at the 2017 FABTECH show in Chicago. Lynch subcontracted with CSI Worldwide to provide some of the necessary services.

CSI contends that it told TRUMPF that it was unsure of Lynch's reliability and would do the work only if TRUMPF paid it directly or guaranteed Lynch's payment. According to CSI, TRUMPF assented—though it did not sign any undertaking to that effect. CSI did the work and billed Lynch, which did not pay. CSI filed an involuntary bankruptcy petition against Lynch, which soon filed a voluntary bankruptcy petition. CSI claimed approximately $530,000 as a creditor. It also filed this suit against TRUMPF under the diversity jurisdiction, seeking $530,000 on theories including unjust enrichment and promissory estoppel. The district court dismissed the suit on the pleadings, ruling that, by making a claim in Lynch's bankruptcy, CSI necessarily represented that Lynch is the sole debtor. The district court called its approach judicial estoppel.

The Supreme Court describes judicial estoppel this way:

> "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000); see 18 *Moore's Federal Practice* §134.30 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* §4477 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

No. 19-2189                                                           3

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up). See also *id.* at 750–51. The Court's description shows that judicial estoppel does not block CSI's suit, for CSI has not prevailed by collecting the debt from Lynch's estate in bankruptcy. The district court believed that success in the earlier suit does not matter to the doctrine of judicial estoppel, but the Supreme Court views the matter differently, as do we. See, e.g., *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548–49 (7th Cir. 1990). Because CSI has not prevailed in the bankruptcy court, judicial estoppel cannot block its claim against TRUMPF.

Nor is CSI's claim against TRUMPF "contrary" to its claim against Lynch. CSI has not asserted, in either the involuntary or the voluntary bankruptcy case, that Lynch is *solely* responsible for payment. It has not tried to recover twice on one debt. The district court believed that making a claim in bankruptcy necessarily abandons all claims against other potentially responsible persons, but it did not explain why or cite authority. As far as we are aware, there is no such authority to be found. Seeking to recover one debt from multiple persons is common and proper.

Think of joint tortfeasors, one of whom is bankrupt. The victim may seek to recover from both, and the fact that one is bankrupt does not force the victim to elect which it will pursue. Suppose the debtor in bankruptcy has insurance; seeking to prove the claim against the asserted tortfeasor in bankruptcy does not block recovery from a solvent insurer. Or think of a commercial transaction in which a firm borrows money and the debt is guaranteed by one of the firm's investors. Making a claim against the borrower in bankruptcy does not cut off recourse against the guarantor. Instead of

4                                                        No. 19-2189

a guarantor, the debt may have the support of a bond. Many a subcontractor insists that the general contractor or the project's owner put up a bond to ensure that the general contractor pays. If the general contractor goes bankrupt, the unpaid subcontractor may file a claim without abandoning its recourse against the bond. Indeed, bonds may require the subcontractor to seek whatever can be had in bankruptcy. If the district court were right, however, all of these claims against third parties would be blocked by the doctrine of judicial estoppel.

This is not a novel problem, and the Bankruptcy Code itself provides the answer. Filing a claim in bankruptcy does not foreclose claims against non-bankrupt obligors. Even a discharge in bankruptcy does not do that. 11 U.S.C. §524(e). Many decisions recognize that a claim in bankruptcy does not block recovery from third parties such as guarantors or jointly responsible persons. See, e.g., *In re Shondel*, 950 F.2d 1301, 1306 (7th Cir. 1991). See also *Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir. 1982) (same outcome under §16 of the Bankruptcy Act of 1898, which preceded the Bankruptcy Code of 1978).

CSI may or may not have a good claim on the merits— and TRUMPF may or may not have a defense that it has paid what it owes. These matters must be resolved on remand.

REVERSED AND REMANDED