IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CSI WORLDWIDE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 CV 5900 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| TRUMPF, INC., | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant TRUMPF, Inc. has filed a motion to compel, (Dckt. #84), seeking an order compelling plaintiff CSI Worldwide, LLC ("CSI") to produce documents and present four witnesses for deposition, including two attorneys who served as CSI's counsel for bankruptcy proceedings involving non-party Lynch Exhibits, Inc. ("Lynch"). For the reasons set forth below, TRUMPF's motion is denied.

**I.   BACKGROUND**

   **A.   The 2017 Fabtech Tradeshow.**

TRUMPF is a manufacturer of specialty machinery, which it showcases at tradeshows. CSI is in the business of providing labor for the installation and dismantling of tradeshow exhibits for companies like TRUMPF. In June 2017, according to CSI, representatives of TRUMPF and CSI met with representatives from Lynch to discuss TRUMPF's desire to participate in the 2017 Fabtech tradeshow in Chicago. Among other things, the parties discussed Lynch designing and engineering TRUMPF's exhibit for Fabtech, and CSI providing the onsite labor to build and dismantle the exhibit after the show.

1

Shortly after the initial meeting, Lynch informed CSI that TRUMPF and Lynch had entered into an agreement whereby Lynch would provide tradeshow services for Fabtech, among other tradeshows. Lynch further informed CSI that TRUMPF wanted CSI to provide the onsite labor for Fabtech. At that time, "because Lynch had a reputation of having poor credit, CSI informed Lynch that CSI would only provide the labor for TRUMPF for the Fabtech trade show as a 'direct bill;' that is CSI would bill TRUMPF directly and TRUMPF would pay CSI directly." (Dckt. #1 at 3). In response, a Lynch representative provided a CSI representative with "official notice" via email that CSI was the labor partner for TRUMPF and that CSI was to invoice TRUMPF directly for CSI's work at Fabtech. (*Id*). According to CSI's allegations, this contention was reiterated at meetings with TRUMPF and TRUMPF never took issue with the plan for direct billing. There is no dispute, however, that CSI was not a signatory to the tradeshow agreement between TRUMPF and Lynch. Ultimately, CSI performed the onsite labor services for TRUMPF's exhibit at the Fabtech show to the tune of $529,830.09.

B. **Lynch's Bankruptcy Proceedings.**

When CSI submitted its invoices to TRUMPF to collect for its services provided at Fabtech, TRUMPF informed CSI that it had already paid *Lynch* for CSI's services and that CSI must collect from Lynch directly. When CSI's efforts to collect from Lynch failed, CSI – along with two other creditors – filed an involuntary bankruptcy petition against Lynch in February 2018 in the United States Bankruptcy Court for the Northern District of New Jersey. In it, CSI – through attorney Arthur Abramowitz – asserted a claim against Lynch for approximately $530,000 for "goods delivered and/or services rendered." (Dckt. #84-3). In signing the petition, attorney Abramowitz attested with "a reasonable belief" that the information provided was "true and correct." (*Id*.).

Subsequently, Lynch filed a petition for voluntary bankruptcy, in which CSI – this time through attorney John Rendemonti "under penalty of perjury" – filed a proof of claim in June 2015 for the same Fabtech services and amount of debt. (Dckt. #84-4). In later objecting to the liquidation plan in the voluntary bankruptcy proceeding, CSI stated that "it is *believed* that . . . Trumpf may have paid to [Lynch] the money to which CSI was entitled" and "*if* Trumpf did in fact pay to [Lynch] the money to which CSI was owed by the assignment . . . *then* the money that was paid to [Lynch] by Trumpf is money that is held in trust by [Lynch] for CSI." (Dckt. #24-6) (emphasis added).

      C.      **Proceedings in this Case.**

In August 2018, CSI filed this case against TRUMPF seeking to recover the $529,830.09 still remaining due for CSI's services at Fabtech based on claims for promissory estoppel, payment over notice of assignment, unjust enrichment, and breach of contract. In response, TRUMPF filed a motion to dismiss, (Dckt. #13), arguing, *inter alia*, that based on CSI's prior sworn statements in the bankruptcy proceedings that *Lynch* owed CSI for its services at Fabtech, CSI should be judicially estopped from now taking the inconsistent position that *TRUMPF* owes CSI. District Court Judge Norgle agreed and dismissed this action on judicial estoppel grounds. (Dckt. #32). However, CSI appealed and, as discussed in more detail below, the Seventh Circuit reversed Judge Norgle's opinion, finding that CSI's claim against TRUMPF here was neither blocked by judicial estoppel nor contrary to CSI's prior claim against Lynch. *CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 663 (7th Cir. 2019).

Upon remand, the parties proceeded with discovery, during which TRUMPF took the depositions of Thomas McLaughlin (CSI's Principal) and Dave Centrowitz (CSI's CEO). During those depositions, McLaughlin and Centrowitz both testified regarding their belief that

3

CSI had a direct bill relationship with TRUMPF for the Fabtech show due to Lynch's "terrible" credit history. (*See, e.g.,* Dckt. #84-1 (McLaughlin Dep. Tr.) at 4 ("[I]t's obviously a direct bill because we don't work with Lynch"); at 6 ("My belief and the facts are we always bill directly with Lynch. We wouldn't have partnered with them to bill Lynch. I mean Lynch is – I mean they're the worst payors there are"); at 7 ("[I]t's just like waking up in the morning. That's how strong the direct bill is with Lynch . . . everybody at Lynch knows that too."); Dckt. #84-2 (Centrowitz Dep. Tr.) at 4 ("Lynch was a very bad – very bad payor so we did never – we would not bill Lynch for our services . . . To my knowledge, anything that I was involved with, we didn't bill Lynch.")).

TRUMPF also served document production requests on CSI which demanded the production of all documents and communications related to Lynch's involuntary and voluntary bankruptcy proceedings. In response, CSI produced all non-privileged documents in its possession that are responsive to the requests in question, withheld other communications under the attorney-client and work product privileges, and provided a privilege log describing the privileged communications as required by Rule 26. (Dckt. #92-4 at 3; Dckt. #84-6).

        **D.**      **TRUMPF's Motion to Compel.**

Discovery closed in this matter on February 3, 2023. During a February 9, 2023 status hearing, the parties reported that they had finished discovery and TRUMPF's counsel indicated that he wanted to file a discovery motion related to the recent depositions of McLaughlin and Centrowitz "to address a question of attorney-client privilege and whether or not it applies or has

4

been waived." (Dckt. 87 at 3). The District Court granted TRUMPF leave to file the motion and set a briefing schedule. (*Id.*).[1]

In its motion to compel, TRUMPF cites to the deposition testimony of McLaughlin and Centrowitz that CSI would *never* directly bill Lynch and asserts that CSI made knowingly false and fraudulent statements in the Lynch bankruptcy proceedings when CSI's representatives "swore under penalty of perjury that it was Lynch – not TRUMPF – who owes CSI the $529,830.09 for the services CSI performed at the FABTECH show in November 2017." (Dckt. #84 at 11). As such, TRUMPF argues that CSI's communications with its attorneys regarding the Lynch bankruptcy proceedings fall within the crime-fraud exception to the attorney-client privilege. TRUMPF further asserts that CSI has waived the attorney-client privilege by placing the communications at issue in this litigation. TRUMPF asks the Court to compel: (1) CSI to produce all previously withheld privileged communications related to the Lynch bankruptcy proceedings; (2) compel the continued depositions of McLaughlin and Centrowitz so that TRUMPF can question them about those privileged communications; and (3) compel the depositions of CSI's bankruptcy attorneys Arthur Abramowitz and John Rendemonti regarding their communications with CSI related to the Lynch bankruptcy proceedings.

CSI responds that neither the crime-fraud exception nor the waiver doctrine are applicable here, and that TRUMPF is simply attempting to re-hash a position already rejected by the Seventh Circuit. For the reasons set forth below, the Court agrees.

---

[1] The fact that the District Court granted TRUMPF leave to file this motion disposes of CSI's objection that this motion is procedurally improper and should be denied because it was filed after the close of discovery and long after CSI issued its responses and objections to the discovery requests in question.

5

## II. ANALYSIS

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 236 (N.D.Ill. 2014). Because "the privilege is in derogation of the search for truth," it is narrowly construed and applies "only where necessary to achieve its purpose." *United States v. BDO Seidman*, LLP, 492 F.3d 806, 815 (7th Cir. 2007) (internal quotations and citations omitted); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (scope of the privilege should be "strictly confined within the narrowest possible limits"). The party asserting the attorney-client privilege has the burden of establishing all essential elements of the privilege and that it has not been waived. *Lawless*, 109 F.2d at 487; *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D.Ill. 2009).

Here, TRUMPF does not dispute that the communications it seeks related to the Lynch bankruptcy proceedings are covered by the privilege. Rather, TRUMPF contends that: (1) the crime-fraud exception to the privilege applies; and/or (2) that CSI has implicitly waived the protection of the privilege by placing the communications at issue in this case. Respectfully, the Court disagrees as to both counts.

### A. TRUMPF has failed to make a prima facie showing that CSI engaged in fraud in the Lynch bankruptcy proceedings.

The crime-fraud exception "places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *BDO Seidman*, 492 F.3d at 818 (citing to *United States v. Zolin,* 491 U.S. 554, 563 (1989)). "This exception comes from the recognition that when legal advice relates 'not to prior wrongdoing, but to future wrongdoing,' the privilege goes beyond what is necessary to achieve its purpose." *Monco v. Zoltec Corp.*, No. 17 CV 6882, 2018

6

WL 11195522, at *2 (N.D.Ill. Sept. 28, 2018), *quoting Zolin,* 491 U.S. at 562-63. As courts have explained, while the "confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered sound." *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 281 (E.D.Va. 2004), *quoting In re Grand Jury Subpoena*, 731 F.2d 1032, 1038 (2d Cir. 1984)*; NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 135 (N.D.N.Y. 2007) (same).

TRUMPF, as the party seeking to invoke the application of the crime-fraud exception, "must present prima facie evidence that 'gives colour to the charge' by showing 'some foundation in fact.'" *BDO Seidman*, 492 F.3d at 818, *quoting United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2001). Thus, in this case, TRUMPF must provide a foundation in fact to show: (1) that CSI was planning or engaged in committing fraud in the Lynch bankruptcy proceedings when the attorney-client communications took place; and (2) that CSI's communications with attorneys Abramowitz and Rendemonti were in furtherance thereof. *See, e.g., Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 769 (7th Cir. 2006); *In re Heraeus Kulzer GmbH*, No. 09 CV 530, 2012 WL 1493883, at *1 (N.D.Ind. Apr. 26, 2012); *Rambus*, 220 F.R.D. at 283; *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C 1768, 2013 WL 6050006, at *4 (N.D.Ill. Nov. 14, 2013) ("Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play.").

Here, TRUMPF relies on its repeated assertion that CSI's representatives swore under penalty of perjury during the Lynch bankruptcy proceedings "that it was Lynch – not TRUMPF – who owes CSI the $529,830.09 for the services CSI performed at the FABTECH show in November 2017." (Dckt. #84 at 11, 6-7, 12, 13; Dckt. #93 at 2). However, as the Seventh Circuit found:

7

> CSI has not asserted, in either the involuntary or the voluntary bankruptcy case, that Lynch is *solely* responsible for payment. It has not tried to recover twice on one debt. The district court believed that making a claim in bankruptcy necessarily abandons all claims against other potentially responsible persons, but it did not explain why or cite authority. As far as we are aware, there is no such authority to be found. Seeking to recover one debt from multiple persons is common and proper.
>
> . . .
>
> Filing a claim in bankruptcy does not foreclose claims against non-bankrupt obligors. Even a discharge in bankruptcy does not do that. 11 U.S.C. § 524(e). Many decisions recognize that a claim in bankruptcy does not block recovery from third parties such as guarantors or jointly responsible persons.

*CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 663 (7th Cir. 2019) (emphasis in original). For these reasons, the Court concluded that CSI's claim against TRUMPF is *not* "'contrary' to its claim against Lynch." *Id.*

Although TRUMPF suggests that the Seventh Circuit's decision does not control the resolution of this issue because it was issued before the deposition testimony of McLaughlin and Centrowitz that only TRUMPF was responsible for the debt, (Dckt. #93 at 5 n.2), this Court does not agree. As the Seventh Circuit found, CSI did not state in the bankruptcy proceedings that *only* Lynch was responsible for the debt in question and its assertion of a claim against Lynch cannot be construed as necessarily representing that Lynch is the *sole* debtor. *CSI Worldwide*, 994 F.3d at 662-63. The law of the case doctrine requires this Court to accept the Seventh Circuit's finding on this issue. *See, e.g., Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018) ("Once an appellate court either expressly or by necessary implication decides an issue, the decision [is] binding upon all subsequent proceedings in the same case under the law of the case doctrine.") (internal quotation marks omitted).

Furthermore, CSI made it clear in its objection to Lynch's plan of liquidation in the voluntary bankruptcy proceeding that it "believed" that *Lynch* was responsible for the debt to the extent Lynch held the disputed funds in trust for CSI because TRUMPF improperly paid Lynch the money to which CSI was owed by virtue of an assignment by Lynch to CSI of its right to payment from TRUMPF. (Dckt. 24-6 at 4; Dckt. #92 at 3). McLaughlin testified consistently with CSI's prior objection in his deposition. (Dckt. #92-5 at 17 ("I just wanted to establish that any money Lynch had was in trust for us. It wouldn't be part of a bankruptcy. They're holding our money.").

In sum: CSI did not engage in fraud (or duplicity of any sort) by asserting a claim against Lynch in the bankruptcy proceedings and the crime-fraud exception is inapplicable. *See, e.g., Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1995 WL 42345, at *3 (N.D.Ill. Feb. 2, 1995) ("As there is no color to plaintiffs charge, the crime-fraud exception does not apply.").

**B. CSI has not waived its attorney-client privilege over the communications in question.**

Alternatively, TRUMPF argues that CSI has waived the attorney-client privilege by placing the advice of its bankruptcy counsel at issue in this case. Again, the Court disagrees.

The attorney-client privilege can also be waived either explicitly or by implication. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). "Express waiver occurs where 'information that would otherwise be privileged is not kept confidential.'" *Cage v. Harper*, No. 17-CV-7621, 2019 WL 6911967, at *1 (N.D.Ill. Dec. 19, 2019), *quoting Patrick v. City of Chicago*, 154 F.Supp.3d 705, 711 (N.D.Ill. 2015). Implied waiver – which TRUMPF attempts to invoke here – occurs when a client asserts claims or defenses that put his or her attorney's advice "at issue" in the litigation. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175

(7th Cir. 1995); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D.Ill. 2001). !

Courts have cautioned, however, that the "at issue" waiver doctrine is limited and "should not be used to eviscerate the attorney-client privilege." *Silverman v. Motorola, Inc.*, 07 CV 4507, 2010 WL 2697599 at *4 (N.D.Ill. July 27, 2010). Accordingly, "[m]erely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. [Rather,] [t]he privileged party must affirmatively put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived." *Cage*, 2019 WL 6911967, at *1 (citing cases)); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2018 WL 1804350, at *5 (N.D.Ill. Apr. 17, 2018) ("A party impliedly waives the privilege only when he or she has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.") (internal quotations and citations omitted); *Beneficial Franchise Co.*, 205 F.R.D. at 216; *see also Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

TRUMPF cites to the following colloquy, (*see* Dckt. #84 at 13), to support its assertion that CSI waived its attorney-client privilege:

**QUESTION (by TRUMPF's counsel):**

And the – basically what you are confirming is that Lynch owed you the 500 plus thousand dollars, correct, $529,830.09?

**ANSWER (by McLaughlin):**

No. My – my counsel is telling me this was to protect –

**MR. WINTER (CSI's counsel):**

Objection, Tom, Don't go into – don't go into your conversation with your attorney or that's all privileged.

10

**ANSWER (by McLaughlin): :**

Okay. I just wanted to establish any money Lynch had was in trust for us. It wouldn't be part of a bankruptcy. They're holding our money. Again, just trying to get paid.

(*see* Dckt. #84 at 13 (citing to Dckt. #84-1 at 9)).

However, McLaughlin answered the question of TRUMPF's counsel by focusing on what he was trying to do in the bankruptcy proceedings (namely, get paid the money he believed that Lynch was holding in trust for CSI) *without* disclosing the content of his communication with CSI's counsel. As such, CSI is not attempting to prove its claim against TRUMPF "by disclosing or describing an attorney-client communication." *Motorola Sols.*, 2018 WL 1804350, at *7. Nor is CSI attempting to use its privileged communications to defeat TRUMPF's judicial estoppel defense.[2] *Id.* Furthermore, even presuming that the state of mind of McLaughlin (and therefore, CSI) "might have been affected by advice of legal counsel," this – in itself – is insufficient to establish waiver given that CSI does not rely on advice of counsel to support its position as to the claim or defenses at issue here. *See Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 325 (N.D.Ill. 2008); *Cage*, 2019 WL 6911967, at *1 ("Merely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. The privileged party must affirmative put at issue the specific communication to which the privilege attaches before the privilege will be deemed waived.").

Thus, because CSI has not placed any specific attorney-client communications at issue, CSI did not waive its attorney-client privilege over the communications in question. *Cage*, 2019 WL 6911967, at *1-2; *Motorola Sols.*, 2018 WL 1804350, at *5, 7; *Grochocinski*, 251 F.R.D. at 326.

---

[2] The Seventh Circuit has already disposed of this defense. *See CSI Worldwide*, 944 F.3d at 662-63.

11

## CONCLUSION

For the foregoing reasons, defendant's motion to compel, (Dckt. #84), is denied.[3]

DATE: September 8, 2023

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**

---

[3] The Court notes that the scope of this decision extends only to the findings that the crime-fraud exception to the attorney-client privilege is inapplicable and that CSI did not waive its attorney-client privilege by placing its attorneys' advice at issue. The Court does not address the parties' dispute as to whether the non-privileged documents related to the Lynch bankruptcy proceedings are relevant to the claims or defenses in this case. Moreover, as the Seventh Circuit previously observed, "CSI may or may not have a good claim on the merits – and TRUMPF may or may not have a defense that it has paid what it owes," *CSI Worldwide*, 944 F.3d at 663, but those issues are not before the Court at this time.