THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CSI WORLDWIDE, LLC,                     )
                                        )
                  *Plaintiff*,          )        No. 18 C 05900
        v.                              )
                                        )        Chief Judge Virginia M. Kendall
TRUMPF, INC.,                           )
                                        )
                  *Defendant*.          )

## OPINION AND ORDER

On September 8, 2023, then Magistrate Judge Jeffrey I. Cummings, denied Defendant TRUMPF, Inc.'s ("TRUMPF") Motion to Compel, (Dkt. 84), Plaintiff CSI Worldwide, LLC ("CSI") to produce documents and present witnesses for depositions. (Dkt. 103). TRUMPF filed timely objections to the Opinion and Order pursuant to Federal Rule of Civil Procedure 72(a). (Dkt. 104). For the reasons set forth below, the Court overrules TRUMPF's objections.

## BACKGROUND

The Court assumes the parties' familiarity with the facts as set forth in Judge Cummings's Order and only recounts them briefly here. Plaintiff CSI provides labor and services for trade shows; specifically, it helps companies install and take down their exhibits. (Dkt. 1 ¶ 5). Defendant TRUMPF manufactures specialty tools and markets them at trade shows across the country. (*Id.* ¶ 6). In 2017, TRUMPF contracted with non-party Lynch—a now-defunct enterprise that worked with manufacturers to create trade show exhibits—to build Trumpf's exhibit for Fabtech Chicago. (*Id.* ¶¶ 7–9). Lynch, in turn, subcontracted with CSI for the setup and takedown of TRUMPF's exhibit on the condition that CSI could bill TRUMPF directly for their work. (*Id.* ¶¶ 9–12). Fabtech took place from November 6–9, 2017. (Dkt. 1 ¶ 13). 529,830.09 dollars' worth of CSI's services later, CSI has yet to receive any payment from either Lynch or TRUMPF. (*Id.* ¶¶ 14, 21).

In February 2018, after numerous attempts to collect, CSI filed an involuntary bankruptcy petition against Lynch in New Jersey seeking to recover the full amount. *See In re Lynch Exhibits, Inc.*, No. 18-12977 (Bankr. D.N.J.), Dkt. 1. The next month, Lynch filed a voluntary petition for bankruptcy and CSI filed a proof of claim for the Fabtech bill. *See In re Dublin Mgmt. Assocs. of N.J., Inc. t/a Lynch Indus.*, No. 18-14501 (Bankr. D.N.J.), Dkts. 1, 164. Finally, on August 28, 2018, while the bankruptcy proceedings were ongoing, CSI filed this case to recover the same outstanding amount from TRUMPF. (Dkt. 1).

Judge Norgel, who previously presided over this case, granted TRUMPF's Motion to Dismiss, (Dkt. 13), on the grounds that CSI was judicially estopped from recovering from TRUMPF given CSI's position in the bankruptcy proceedings that Lynch was responsible for the debt. (Dkt. 32). The Seventh Circuit reversed, finding judicial estoppel did not apply and that CSI's claim against TRUMPF is not contrary to its claim against Lynch. *CSI Worldwide, LLC v. TRUMPF, Inc.*, 944 F.3d 661 (7th Cir. 2019) ("Seeking to recover one debt from multiple persons is common and proper."). After remand, the case was reassigned and eventually referred to then Magistrate Judge Cummings for discovery supervision. (*See* Dkts. 63, 89). During discovery, TRUMPF took depositions of two CSI executives, Thomas McLaughlin and Dave Centrowitz, information from which led TRUMPF to file the instant Motion to Compel. (*See* Ex. A, Dkt. 84-1 (McLaughlin Dep. Tr.); Ex. B, Dkt. 84-2 (Centrowitz Dep. Tr.)).

TRUMPF asks the Court to compel: "(1) CSI to produce all previously withheld privileged communications related to the Lynch bankruptcy proceedings; (2) compel the continued depositions of McLaughlin and Centrowitz so that TRUMPF can question them about those privileged communications; and (3) compel the depositions of CSI's bankruptcy attorneys . . . regarding their communications with CSI related to the Lynch bankruptcy proceedings." (Dkt. 103

at 5). TRUMPF argues McLaughlin's and Centrowitz's testimony establishes that CSI made knowingly false or fraudulent statements to the Bankruptcy Court in Lynch's involuntary proceedings, which triggers the crime–fraud exception to the attorney–client privilege. (Dkt. 84 ¶¶ 23, 38–44). Further, TRUMPF suggests that McLaughlin waived attorney–client privilege when he "opened the door to his communications with [his attorneys] regarding the Lynch bankruptcy proceedings." (*Id.* ¶ 45). Judge Cummings denied the Motion and the Court now considers TRUMPF's timely Rule 72(a) objections.

## **DISCUSSION**

This Court reviews a Magistrate Judge's Order over nondispositive discovery issues deferentially and may only overturn such a decision if it was "clearly erroneous or is contrary to the law." Fed. R. Civ. P. 72(a); *see Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115–16 (7th Cir. 2013); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). This standard presents a high bar for TRUMPF to clear.

Judge Cummings denied TRUMPF's Motion to Compel because (1) TRUMPF failed to make a *prima facie* showing that CSI's actions in the Lynch bankruptcy proceedings amounted to a crime or fraud and (2) McLaughlin's deposition testimony did not place any specific attorney–client communications at issue in the litigation. (Dkt. 103 at 9–11). TRUMPF objects and claims that Judge Cummings's analysis is clearly erroneous or contrary to law for two reasons. First, because the Order relied too heavily on the law of the case doctrine without considering new factual details. (Dkt. 104 at 3). And second, because the Order misconstrued McLaughlin's deposition testimony and, under TRUMPF's view of that testimony it is clear CSI waived privilege over communications surrounding the Lynch bankruptcy proceedings. (*Id.* at 7–9). Taking each

argument in turn, the Court finds TRUMPF has fallen well short of showing Judge Cummings's Order was clearly erroneous or contrary to law.

## I.     Crime–Fraud Exception

Communications which are made " 'for the purpose of getting advice for the commission of a fraud' or crime" fall outside the attorney–client privilege. *United States v. Zolin*, 491 U.S. 554, 563 (1989) (citation omitted). Fraudulent litigation, meaning the pursuit of baseless claims, can trigger the crime–fraud exception. *See, e.g.*, *Peerless Indus., Inc. v. Crimson AV LLC*, 2013 WL 6050006, at *4 (N.D. Ill. Nov. 14, 2013) (citing *In re Richard Roe, Inc.*, 168 F.3d 69, 71–72 (2d Cir. 1999)). The party asserting the crime–fraud exception based on fraudulent litigation must demonstrate probable cause[1] that the suit at issue "had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud." *Id.* Judge Cummings's Order correctly ruled that TRUMPF failed to make this required showing.

Relying on the law of the case doctrine, Judge Cummings accepted the Seventh Circuit's finding that "CSI did not state in the bankruptcy proceedings that *only* Lynch was responsible for the debt in question and its assertion of a claim against Lynch cannot be construed as necessarily representing that Lynch is the *sole* debtor." (Dkt. 103 at 8 (citing *CSI Worldwide*, 994 F.3d at 662– 63)). TRUMPF argues that this reliance was misplaced as it ignores McLaughlin's and Centrowitz's deposition testimony, which came after the Seventh Circuit ruling, and because the Seventh Circuit never passed on the issue of whether CSI engaged in fraud by asserting a claim against Lynch in bankruptcy court. (Dkt. 104 at 5–6).

---

[1] This fraud on the court standard is substantially similar to the standard Magistrate Judge Cummings outlined in his Order, which is that TRUMPF was required to present a foundation in fact to demonstrate that CSI was planning to commit or actively committing a fraud on the court through the Lynch bankruptcy proceedings. (*See* Dkt. 103 at 7 (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007)). TRUMPF's argument fails under both.

4

TRUMPF overstates Judge Cummings's reliance on the law of the case doctrine. Judge Cummings only used the doctrine to accept the factual finding that CSI never took the position in bankruptcy that Lynch was CSI's *only* debtor on the Fabtech balance. (Dkt. 103 at 8). His Order went on to consider CSI's statements in the voluntary bankruptcy proceeding and McLaughlin's deposition testimony to establish that CSI appears to have held a sincere belief that TRUMPF may have paid Lynch for CSI's services and, if that was the case, "any money Lynch had was in trust for" CSI. (Dkt. 103 at 9; Dkt. 92-5 at 17). Together, these facts undercut any suggestion that CSI undertook its efforts in bankruptcy based on fraudulent pretenses.

To address TRUMPF's objection more directly, McLaughlin's and Centrowitz's testimony does not materially change the post-remand landscape. Based on the Court's review of the transcripts, in 2018, when this suit and both bankruptcy proceedings were initiated, CSI believed that TRUMPF may have paid Lynch for CSI's services, despite a separately held belief that it had a valid direct billing arrangement with TRUMPF. TRUMPF's own emails with McLaughlin and Centrowitz support CSI's belief that TRUMPF may have paid Lynch for CSI's work, wherein TRUMPF states it was their understanding that CSI's bill "will be paid by Lynch on behalf of TRUMPF." (Ex. 7, Dkt. 92-7 at 4; *cf.* Ex. 9, Dkt. 92-9 at 2 (email from TRUMPF to Lynch indicating it was TRUMPF's position that it did not owe CSI any money because CSI's work "was included in our agreement with Lynch Exhibits")). While McLaughlin did testify that he had personal doubts as to whether TRUMPF paid Lynch for CSI's work, he knew very little for certain. Indeed, at the time of his deposition in 2023, McLaughlin testified that he still did not know whether or how much TRUMPF had paid Lynch. (Dkt. 84-1 at 56:9–18 ("I've seen some documents that have all been redacted. I can't tell what was paid for what to be honest with you. I got 20 pages of black documents.")). Taken together, this testimony indicates CSI had a justifiable

factual basis for its bankruptcy actions against Lynch and those actions were not "substantially for the purpose of furthering [a] crime or fraud." *Peerless Indus.*, 2013 WL 6050006, at *4.

Likewise, CSI's position in this litigation has a sound legal and factual basis. On the question of direct billing, which forms this suit's foundation, McLaughlin and Centrowitz both testified based on fifteen years of business practice that CSI would never work with Lynch *unless* they could bill the client directly. (*See* Dkt. 84-1 at 17:7–9, 32:10–33:13, 35:18–36:5 (McLaughlin Dep. Tr.); *see also* Dkt. 84-2 at 9:13, 9:19–10:5, 33:8–15 (Centrowitz Dep. Tr.)). Far from establishing fraud, this testimony and evidence simply illustrates the reasons why "[s]eeking to recover one debt from multiple persons is common and proper." *CSI Worldwide*, 944 F.3d at 663.

The CSI depositions highlight the difference between what CSI's executives thought *should* have happened with what CSI's executives thought *might* have happened. CSI thought they should have been able to bill TRUMPF directly, which is an alleged right they seek to enforce through this lawsuit. Simultaneously, CSI thought TRUMPF might have paid Lynch for their services, in which case the company felt it necessary to protect any such funds through the bankruptcy proceedings. Thus, TRUMPF has failed to show probable cause or any foundation in fact to support the claim that CSI's bankruptcy efforts perpetrated a fraud on the court.[2] Judge Cummings's findings on this question were neither contrary to the law nor clearly erroneous.

## II.     Privilege Waiver

TRUMPF next objects to the finding that McLaughlin did not impliedly waive attorney–client privilege over all communications related to the bankruptcy proceedings. (Dkt. 104 at 8–9).

---

[2] The Court notes the irony of TRUMPF's argument, which tries to have it both ways. TRUMPF simultaneously claims CSI's bankruptcy position was fraudulent, while also stating it has believed all along that same position is the right one. (*See* Dkt. 84 at 7 n.2 ("To be clear, it is TRUMPF's position that CSI's statements in the Lynch bankruptcy proceedings are accurate (i.e., it is Lynch, and has always been Lynch, who is responsible for the debt—and not TRUMPF).").

Implied waiver of privilege only applies when a party affirmatively places an attorney–client communication at issue in a case by relying on it to prove a claim or defense. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995); *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). Privilege is not waived, however, simply "because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *see also Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, 740 F. Supp. 3d 685, 694 (N.D. Ill. 2024).

TRUMPF relies on the following exchange in McLaughlin's deposition to support his implied waiver argument:

> **QUESTION (by TRUMPF's counsel):**
> And the – basically what you are confirming is that Lynch owed you the 500 plus thousand dollars, correct, $529,830.09?
> **ANSWER (by McLaughlin):**
> No. My – my counsel is telling me this was to protect –
> **MR. WINTER (CSI's counsel):**
> Objection, Tom, Don't go into – don't go into your conversation with your attorney or that's all privileged.
> **ANSWER (by McLaughlin):**
> Okay. I just wanted to establish any money Lynch had was in trust for us. It wouldn't be part of a bankruptcy. They're holding our money. Again, just trying to get paid.

(Dkt. 84-1 at 53:11–23). Judge Cummings found that none of the above information shows that CSI is using an attorney–client communication to prove one of their claims or defeat any of TRUMPF's defenses. (Dkt. 103 at 11). TRUMPF's objection cites no legal authority and amounts to little more than a rehashing of its original argument and disagreement with how Judge Cummings viewed the evidence. (*See* Dkt. 104 at 7–9). The testimony on which TRUMPF relies is effectively a sentence with no end, interrupted with a privilege objection. While TRUMPF seems to think the testimony is clear, and accuses CSI of "gamesmanship" and "wordsmithing around th[e] issue," the Court gleans very little from the exchange. (Dkt. 104 at 8). CSI's attorneys' advice

7

about the bankruptcy litigation is both unclear from the record and, more importantly, not directly relevant to any of CSI's claims or TRUMPF's defenses. McLaughlin's testimony—without disclosing an attorney communication—merely established that his efforts in the bankruptcy proceedings were undertaken to protect any money that TRUMPF might have paid Lynch for CSI's work. Thus, the Court agrees with Judge Cummings's implied waiver analysis and TRUMPF has failed to demonstrate anything in his Order that is clearly erroneous or contrary to law.

## **CONCLUSION**

For the reasons set forth above, Defendant TRUMPF's Rule 72 Objections to Magistrate Judge's Opinion and Order Denying Defendant's Motion to Compel [104] are overruled.[3]

Virginia M. Kendall
United States District Judge

Date: February 18, 2025

---

[3] While a close call, the Court finds TRUMPF's Motion was "substantially justified" and thus declines CSI's request for fees and costs under Federal Rule of Civil Procedure 37(a)(5)(B).